**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| In re:<br><br>**THE COLONIAL BANCGROUP, INC.,**<br><br>       Debtor. | |
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Colonial Bank,**<br><br>       Appellant,<br><br>    v.<br><br>**THE COLONIAL BANCGROUP, INC., et al.,**<br><br>       Appellees. | Case No. 2:10-cv-0877 (MHT)<br><br>**Bankruptcy Appeal** |

**RESPONSE OF APPELLANT FDIC-RECEIVER TO POST-ARGUMENT SUPPLEMENTAL BRIEF FILED BY THE COLONIAL BANCGROUP, INC.**

Michael A. Fritz, Sr.
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422

- and -

John J. Clarke, Jr.
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
212-335-4500
212-335-4501

Dated:  December 7, 2011

Attorneys for the FDIC-Receiver

## Table of Authorities

Page

### Cases

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008)...............................................................................................1

*Bakst v. Wetzel (In re Kingsley)*,
518 F.3d 874 (11th Cir. 2008) .............................................................................3

*F.D.I.C. v. AmFin. Fin. Corp.*,
No. 1:10-CV-1298, 2011 WL 2200387 (N.D. Ohio June 6, 2011) ..........................3

*F.D.I.C. v. AmTrust Fin. Corp.*,
No. 1:10-CV-1298, 2011 WL 334976 (N.D. Ohio Jan. 31, 2011) ...........................4

*In re FirstCorp, Inc.,*126 B.R. 688, 691 (Bankr. E.D.N.C. 1991), *rev'd*, No. 91-473-CIV-
5-BR, 1991 WL 355141 (E.D.N.C. Nov. 7, 1991), *aff'd*, 973 F.2d 243 (4th Cir. 1992)...........2

*O.T.S. v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.)*,
236 F.3d 1246 (10th Cir. 2001) .......................................................................... 1-3

*R.T.C. v. FirstCorp., Inc. (In re FirstCorp., Inc.)*,
973 F.3d 243 (4th Cir. 1992) ............................................................................. 2-3

*United States v. Gonzales*,
520 U.S. 1 (1997).................................................................................................1

*Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus. Inc.)*,
No. 03-cv-08627, slip op. (C.D. Cal. Feb. 15, 2005)...............................................5

*Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus., Inc.*,
No. CV 03-08627-JVS, slip op. (C.D. Cal. Aug. 2, 2010) .......................................5

### Statutes

11 U.S.C. § 365............................................................................................. *passim*

Appellant Federal Deposit Insurance Corporation, as receiver for Colonial Bank (the "FDIC-Receiver"), respectfully submits this supplemental brief in response to the post-argument brief filed by appellee The Colonial BancGroup, Inc. (the "Debtor") in this bankruptcy appeal. The Debtor's post-argument brief does not advance any argument that was not already made in its principal brief on appeal. None of the supplemental points raised in the post-argument brief provide a basis for affirmance of the bankruptcy court's erroneous rulings below.

*First*, the bankruptcy court's analysis of the Debtor's capital maintenance commitments under standards applicable to executory contracts ignored both the plain language of section 365(o) of the Bankruptcy Code itself and the case law applying it. Unlike every other subsection of 11 U.S.C. § 365 that refers to "executory contracts" or "unexpired leases," section 365(o) applies to "*any* commitment by the debtor to maintain . . . capital" of a bank subsidiary. 11 U.S.C. § 365(o) (emphasis added). As the Supreme Court has observed, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (internal citation omitted); *see also Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008) ("Congress' use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind.").

Courts have consistently and forcefully rejected the Debtor's argument equating capital maintenance commitments under section 365(o) with executory contracts under the other provisions of section 365 of the Bankruptcy Code. In *Overland Park*, for example, the Tenth Circuit reversed a bankruptcy court order that denied relief under section 365(o) based on a bankrupt holding company's "informal" net worth maintenance stipulation. The bankruptcy court had concluded that the stipulation "was not an enforceable executory contract, and

therefore not subject to" section 365(o). *O.T.S. v. Overland Park Fin. Corp. (In re Overland Park Fin. Corp.),* 236 F.3d 1246, 1250 (10th Cir. 2001). The Tenth Circuit disagreed, holding that "nowhere in 11 U.S.C. § 365(o) does Congress mention the commitment must be contractual, executory, formal, or post 1984. Congress undisputedly knew how to include 'executory' or other limiting language, but Congress did not do so in § 365(o)." *Id.* at 1252. In words that have equal application to the Debtor's arguments here, the court "refuse[d] to import Overland Financial's constrictive requirements into the statute's express language," instead holding that section 365(o) only required a "commitment," which was commonly defined as "an '[a]greement or pledge to do something.'" *Id.* (quoting *R.T.C. v. FirstCorp., Inc. (In re FirstCorp., Inc.)*, 973 F.3d 243, 249 n.5 (4th Cir. 1992)).

Similar arguments were made in *FirstCorp*, where a bankrupt holding company tried to avoid liability on the ground that a net worth maintenance stipulation was "not an enforceable contract" or an "executory contract and therefore [cannot be] subject to the 'deemed assumption' requirement of § 365(o) . . ." *In re FirstCorp, Inc.,*126 B.R. 688, 691 (Bankr. E.D.N.C. 1991), *rev'd*, No. 91-473-CIV-5-BR, 1991 WL 355141 (E.D.N.C. Nov. 7, 1991), *aff'd*, 973 F.2d 243 (4th Cir. 1992). On appeal, the Fourth Circuit considered and expressly rejected these arguments. *See* 973 F.2d at 249-50 & n.5, n.6.

The appellate courts in *FirstCorp* and *Overland Park* both applied precisely the same principles of statutory construction that were followed by this Court during argument in the current appeal, and those principles conclusively refute the Debtor's proposed construction of section 365(o). *See Overland Park*, 236 F.3d at 1252 (contrasting words of § 365(o) with words of §§ 365(a) through (n) and concluding that "Congress undisputedly knew how to include 'executory' or other limiting language, but Congress did not do so in § 365(o)"); *FirstCorp*, 973

F.2d at 247 & n.3 (contrasting mandatory assumption and cure requirements of § 365(o) with elective assumption of executory contracts under 11 U.S.C. § 365(a)); *see also* Transcript of Argument on Nov. 7, 2011, at 50-51.

In this appeal, the Debtor has not identified a single decision that reached a different conclusion, and there are none.  The district court in *AmFin* did not apply the erroneous executory contract analysis followed by the bankruptcy court in this case, as the Debtor suggests.  To the contrary, the *AmFin* court followed *FirstCorp* and *Overland Park* in holding that section 365(o) only required "an *agreement or pledge* that the parties to the transaction intended be binding *or* enforceable."  *F.D.I.C. v. AmFin. Fin. Corp.*, No. 1:10-CV-1298, 2011 WL 2200387, at *11 (N.D. Ohio June 6, 2011) (emphasis added) (appeal to Sixth Circuit pending).  There is no question that each of the three commitments made by the Debtor to its federal banking regulators satisfied this standard, as the Debtor's counsel conceded at argument.  *See* Transcript of Argument on Nov. 7, 2011, at 50-51 (Statements of Mr. Dobbs:  "They are agreements, yes." and "They were commitments").  Each of the three documents also unambiguously included a "commitment to maintain the capital of an insured depository institution" within the meaning of section 365(o) for the reasons already discussed in the FDIC-Receiver's briefs on appeal.  *See, e.g.,* FDIC-Receiver Reply Br. at 7-9.[1]

*Second*, the putative capital restoration plan that the Debtor submitted to regulators on the day of Colonial Bank's failure is beside the point.  While the Debtor was required under

---

[1] The bankruptcy court correctly rejected the Debtor's argument that it was excused from its capital maintenance commitments because the cease and desist order issued to Colonial Bank was terminated after the Debtor's bankruptcy petition date.  A 39.  The bankruptcy court found that the petition date had already passed by then and rejected the suggestion that the Debtor's obligation had not "matured."  *Id.*  The Debtor is barred from taking issue with those rulings due to its failure to cross-appeal from them.  *See Bakst v. Wetzel (In re Kingsley)*, 518 F.3d 874, 876 n.1 (11th Cir. 2008) (*per curiam*).

*section 2* of the Debtor C&D Order to submit such a plan, the capital maintenance commitment in the cease and desist order was contained in *section 1* of that document.  *See* A 171.  The fact that section 1 of the cease and desist order referred to a requirement that the Debtor's "board of directors" was obligated to discharge is of no legal consequence, as the *AmFin* court expressly recognized when it rejected an identical argument with respect to the cease and desist order at issue there.  *See F.D.I.C. v. AmTrust Fin. Corp.*, No. 1:10-CV-1298, 2011 WL 334976, at *18 (N.D. Ohio Jan. 31, 2011) ("a corporation cannot act except through the actions of its Board, and there is no legal distinction between a corporation and the board of a corporation").[2]

*Third*, regardless of whether the Debtor might pursue still more litigation against the FDIC-Receiver if this Court reverses the decision below, it is indisputable that a reversal would render academic, if not moot, most of the other issues pending in litigation between these two parties.  The Debtor has admitted that its objective in the pending litigation is to establish that the FDIC-Receiver is only a creditor of its estate and not the direct owner of disputed assets such as tax refunds and REIT preferred securities.  In such circumstances, the FDIC-Receiver's recovery would be limited to a ratable distribution along with the Debtor's bondholders and other creditors.  However, even if the Debtor's debtor-creditor arguments were correct (which they are not for the reasons shown elsewhere), a reversal of the bankruptcy court in this appeal would result in the FDIC-Receiver recovering substantially all of the amounts in dispute elsewhere as a priority creditor anyway.

In any event, the Debtor's reactivated avoidance action would likely be dismissed because an avoidance defense is not available with respect to capital maintenance commitments

---

[2] The applicable provisions of the 4(m) agreement and the Debtor MOU only mention the Debtor itself, and not the Debtor's board of directors.  *See* A 143, A 145.  The Debtor never attempts to reconcile its construction of the capital maintenance commitment contained in the Debtor C&D Order with the commitments contained in those two earlier documents.

under either section 544 or section 548 of the Bankruptcy Code.  *See Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus., Inc.*, No. CV 03-08627-JVS, slip op. at 11-12 (C.D. Cal. Aug. 2, 2010) (federal banking law preempts state law avoidance claim under § 544); *Wolkowitz v. F.D.I.C. (In re Imperial Credit Indus. Inc.)*, No. 03-cv-08627, slip op. at 4 (C.D. Cal. Feb. 15, 2005) (§ 548 avoidance argument is a "trustee defense" that is not available to debtor that has not cured deficit under a capital maintenance commitment), *aff'd in part, rev'd in part on other grounds*, 527 F.3d 959 (9th Cir. 2008).  (Copies of these slip opinions are attached hereto as Exhibits 1 and 2).

## CONCLUSION

For all of the reasons set forth in the FDIC-Receiver's submissions in this appeal, the rulings of the bankruptcy court below should be reversed.

Dated:  Montgomery, Alabama
        December 7, 2011

Respectfully submitted,

 /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.
Fritz, Hughes & Hill LLC
1784 Taliaferro Trail, Suite A
Montgomery, Alabama  36117
(334) 215-4422

- and -

John J. Clarke, Jr.
Spencer Stiefel
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
212-335-4500
212-335-4501

Attorneys for the
Federal Deposit Insurance Corporation
as Receiver for Colonial Bank

## CERTIFICATE OF SERVICE

The undersigned hereby certifies he is one of the attorneys for defendant FDIC-Receiver and that on December 7, 2011, a true and correct copy of the foregoing document was filed with this Court's ECF system in this action, which will cause the electronic service of this document upon all persons registered in this action to receive CM/ECF notifications as of its filing to include the following:

**C. Edward Dobbs**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: ced@phrd.com

**J. David Freedman**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email:  jdf@phrd.com

**Rufus T. Dorsey IV**
Parker, Hudson, Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue, NE
Atlanta, GA 30303
Email: rtd@phrd.com

**William Clark Watson**
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203
Email: cwatson@balch.com

**Nicholas Christian Glenos**
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Email: cglenos@ba-boult.com

**Thomas Parker Griffin , Jr.**
Bradley Arant Boult Cummings,LLP
1819 5th Avenue North
Birmingham, AL 35203
Email: pgriffin@babc.com

_____ /s/ Michael A. Fritz, Sr._____
Michael A. Fritz, Sr.

**<u>Exhibit 1</u>**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |

| | |
|---|---|
| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |

Present: The Honorable     James V. Selna

| Julie Barrera for Karla J. Tunis | Sharon Seffens |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael Strub | Michael Bierman |

**Proceedings:**     FDIC'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S FIRST AMENDED COMPLAINT

Cause called and counsel make their appearances. The Court's tentative ruling is issued. Counsel make their arguments. The Court GRANTS the defendant's motion and rules in accordance with the tentative ruling as follows:

<u>Order re Motion for Summary Judgment</u>

Defendant Federal Deposit Insurance Corporation ("FDIC") moves for summary judgment under Federal Rule of Civil Procedure 56 on the First Amended Complaint of Plaintiff Edward M. Wolkowitz ("the Trustee"), the Chapter 7 Trustee for Imperial Credit Industries, Inc. ("Imperial"). The Trustee opposes.

## I.    BACKGROUND

This case arises from the undercapitalization and eventual insolvency of the federally-insured Southern Pacific Bank ("SPB"), and the subsequent bankruptcy of its holding company, Imperial. The case is before the Court on remand from the Ninth Circuit. <u>In re Imperial Credit Indus., Inc.</u>, 527 F.3d 959, 973 (9th Cir. 2008).

In February 2002, the FDIC determined that SPB was undercapitalized and, pursuant to the Prompt Corrective Action provisions codified at 12 U.S.C. § 1831*o* ("the PCA provisions"), issued a notice requiring SPB to submit a capital restoration plan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS | Date | August 2, 2010 |
|---|---|---|---|
| | consolidated with SACV 08-1116-JVS(ANx) | | |

| Title | In re: Imperial Credit Industries, Inc. |
|---|---|
| | Edward Wolkowitz v F.D.I.C. |

<u>Imperial</u> <u>Credit</u>, 527 F.3d at 963. On March 1, 2002, SPB submitted a plan, under which Imperial guaranteed SPB's performance ("the Performance Guaranty") as required by federal law.[1] <u>Id.</u> The plan was not initially approved, but after several subsequent attempts, the FDIC approved a revised plan submitted on May 24, 2002, which called for a capital infusion of approximately $55 million by July 22, 2002. <u>Id.</u> at 964. However, SPB failed to implement the plan by the deadline, and on February 7, 2003, the California Department of Financial Institutions declared SPB insolvent and appointed the FDIC as receiver. <u>Id.</u> Imperial voluntarily filed for Chapter 11 bankruptcy and subsequently converted its case to Chapter 7. <u>Id.</u> at 964-65.

After taking over as receiver of SPB, the FDIC demanded that Imperial comply with the Performance Guaranty by turning over $18,375,800. <u>Id.</u> In response, Imperial filed an adversary action in bankruptcy court, seeking to avoid the obligation. <u>Id.</u> In relevant part, Imperial asserted that the Performance Guaranty obligation constituted a fraudulent conveyance voidable under 11 U.S.C. § 548. <u>Id.</u>

The Court dismissed this claim as barred by 12 U.S.C. § 1828(u). (Docket No. 36 at 7.) In relevant part, § 1828(u) bars any claims against the FDIC "for the return of assets" transferred to an insured institution by the controlling shareholder while that institution was undercapitalized. <u>See id.</u> at 1828(u). The Trustee argued that § 1828(u) was inapplicable because the Performance Guaranty was an "obligation" rather than an "asset." (Docket No. 36 at 7.) The Court disagreed with the distinction, and found the Trustee's claim barred by § 1828(u).

The Ninth Circuit reversed, agreeing with the Trustee that § 1828(u) barred only claims based on transfers of assets, not obligations. <u>Imperial</u> <u>Credit</u>, 527 F.3d at 971-72. On remand, the Trustee filed a First Amended Complaint seeking avoidance of the Performance Guaranty under two claims of constructive fraudulent conveyance: (1) the First Claim for Relief under 11 U.S.C. § 544(b)(1), which allows a bankruptcy trustee to void a fraudulent conveyance under applicable state or federal law, and (2) the Second Claim for Relief under 11 U.S.C. § 548, which provides a federal fraudulent conveyance

---

[1] A capital restoration plan can only be accepted by the FDIC if the bank's holding company guarantees performance of the plan. 12 U.S.C. § 1831*o*(e)(2)(C)(ii).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS | Date | August 2, 2010 |
|---|---|---|---|
| | consolidated with SACV 08-1116-JVS(ANx) | | |

| Title | In re: Imperial Credit Industries, Inc. |
|---|---|
| | Edward Wolkowitz v F.D.I.C. |

claim for the trustee. (FAC ¶¶ 48-63.) The parties have since stipulated to dismiss the Second Claim for Relief with prejudice.

The FDIC seeks summary judgment on the Trustee's sole remaining claim on two grounds: (1) the provisions of California's fraudulent transfer statute, California Civil Code section 3439, asserted by the Trustee pursuant to 11 U.S.C. § 544(b), are preempted by the PCA provisions of the Federal Deposit Insurance Corporation Improvement Act ("FDIA"), 12 U.S.C. § 1831*o*, and (2) Imperial received reasonably equivalent value in exchange for the Performance Guaranty.

II.   LEGAL STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the nonmoving party, indicates that "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine issue of material fact as to that portion of the claim. Fed. R. Civ. P. 56(a), (b); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by reference to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation marks and citations omitted). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
|---|---|---|---|

| Title | In re: Imperial Credit Industries, Inc. Edward Wolkowitz v F.D.I.C. |
|---|---|

be drawn in his favor." Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its burden, then the nonmoving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. See id. at 322-23. If the nonmoving party meets this burden, then the motion will be denied. Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

III.   DISCUSSION

A.   The Trustee's Standing Under § 544(b)

The FDIC first argues that the Trustee cannot, as a matter of law, assert a fraudulent transfer claim against it under 11 U.S.C. § 544(b) because the state laws on which it relies are preempted by federal law. The Trustee argues that preemption does not apply because the § 544(b) fraudulent transfer claim arises under federal law and merely borrows from state law for the rule of decision.

Section 544(b)(1) provides that "the trustee may avoid any . . . obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." It provides no substantive law for determining whether a transfer is voidable; rather, courts have interpreted the provision to allow the trustee to void transfers under the applicable state law, such as California's fraudulent transfer statute, California Civil Code section 3439 et seq. See, e.g., In re AFI Holding, Inc., 525 F.3d 700, 703 (9th Cir. 2008); 5 Collier on Bankruptcy, ¶ 544.06 (2010); see also Stellwagen v. Clum, 245 U.S. 605, 613-14 (1918) (noting that § 70e of Bankruptcy Act, predecessor to § 544(b), allows bankruptcy trustee to avoid conveyances under state law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
|---|---|---|---|

| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |
|---|---|

"Pursuant to the Supremacy Clause, U.S. Const., Art. VI, cl. 2, federal law can preempt and displace state law . . . ." Ting v. AT&T, 319 F.3d 1126, 1135 (9th Cir. 2003). However, "[a] preemption analysis is simply inapplicable where the conflict is between two federal statutes . . . rather than between a federal and a state law." Willis v. Pacific Maritime Ass'n, 244 F.3d 675, 684 (9th Cir. 2001); accord United States v. Klubock, 832 F.2d 649, 651 (1st Cir. 1987) ("It is axiomatic that the Supremacy Clause of the Constitution has relevance only to state interference with federal law." (footnote omitted, emphasis in original)).

Generally, where a federal law incorporates state law, that state law is elevated to federal status, so that preemption does not apply. For example, in In re Kincaid, 917 F.2d 1162, 1166 (9th Cir. 1990), the Ninth Circuit considered whether the federal Employee Retirement Income Security Act ("ERISA") preempted state spendthrift trust law so that ERISA trust funds could be excluded from a bankrupt's estate. See id. at 1165-66. The bankruptcy trustee in that case sought to recover from the bankrupt's 401(k) account, but the plan administrator refused, arguing that the funds were excluded from the estate under 11 U.S.C. 541(c)(2) of the Bankruptcy Code. Id. at 1165. At the time, that exclusion provision was read narrowly to only encompass plans that were considered spendthrift trusts under the relevant state law. Id. at 1165-66. The plan administrator argued that state spendthrift trust law should be preempted by ERISA, thus allowing the ERISA plan to be excluded regardless of its status under state law. Id. at 1166. The Ninth Circuit rejected the preemption argument because the state law was incorporated by the Bankruptcy Code:

Whatever the effect of ERISA may be on state law standing alone, it does not follow that ERISA affects bankruptcy law indirectly by affecting state spendthrift trust requirements. Rather, those requirements are adopted into the bankruptcy law for the purpose of offering protection to debtors. . . . ERISA trusts must look to state spendthrift law for protection in the bankruptcy setting.

Id. (internal citations omitted, emphasis added); accord In re Dyke, 119 B.R. 536, 538 (S.D. Tex. 1990) (finding that ERISA did not preempt a state law which was incorporated by the Bankruptcy Code); see also Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 864

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
|---|---|---|---|

| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |
|---|---|

(4th Cir. 1994) ("[P]reemption analysis is inappropriate when . . . a federal statute expressly incorporates state law."); <u>Klubock</u>, 832 F.2d at 651 (holding that preemption did not apply where a district court adopted a state ethics rule "because by its incorporation into the local rules, [the ethics rule] has become <u>federal</u> law" (emphasis in original)).

However, Section 544(b) does not simply adopt a state rule of decision. Rather, it provides a right to bring a state law claim that is derivative of an actual unsecured creditor under the circumstances. <u>Smith</u> v. <u>Am.</u> <u>Founders</u> <u>Fin., Corp.</u>, 365 B.R. 647, 659 (S.D. Tex. 2007); 5 <u>Collier</u> <u>on</u> <u>Bankruptcy</u>, ¶ 544.06[1]. Thus, courts have held that a trustee lacks standing to bring a § 544(b) claim where there is no creditor with an allowable transfer avoidance claim against the obligee. <u>See, e.g.</u>, <u>In re</u> <u>Acequia, Inc.</u>, 34 F.3d 800, 807-09 (9th Cir. 1994) (discussing the requirement of a "triggering creditor"); <u>In re</u> <u>Forbes</u>, 372 B.R. 321, 335 (B.A.P. 6th Cir. 2007); <u>In re</u> <u>Wintz</u> <u>Cos.</u>, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999); <u>In re</u> <u>Allou</u> <u>Distribs., Inc.</u>, 392 B.R. 24, 30 (Bankr. E.D.N.Y. 2008). For example, where the "triggering creditor" is estopped from bringing a transfer avoidance claim, the trustee lacks standing to bring a § 544(b) claim. <u>Forbes</u>, 372 B.R. at 335 (citing <u>In re</u> <u>Marlar</u>, 252 B.R. 743, 754 (B.A.P. 8th Cir. 2000)); <u>Allou</u> <u>Distribs., Inc.</u>, 392 B.R. at 31; 5 <u>Collier</u> <u>on</u> <u>Bankruptcy</u>, ¶ 544.06[3] ("The general rule is that section 544(b) confers upon the trustee no greater rights of avoidance than the creditor would have if it were asserting invalidity on its own behalf.").

The Trustee points out that a trustee's claim under § 544(b) is not entirely limited by the creditor's state law claim. For example, the trustee's claim is not limited to the amount owed to the triggering creditor. <u>Acequia</u>, 34 F.3d at 810; <u>In re</u> <u>Schaefer</u>, 331 B.R. 401, 417 (Bankr. N.D. Iowa 2005). However, this is because § 544(b) only governs the <u>right</u> to bring a state-law fraudulent transfer claim, while a separate provision, 11 U.S.C. § 550(a), which permits recovery beyond that of the triggering creditor, "governs the <u>extent</u> to which the trustee may exercise that right." <u>Acequia</u>, 34 F.3d at 809. There is no comparable Bankruptcy Code provision allowing § 544(b) claims where the underlying state claim is preempted.

The Trustee also asserts that a trustee can bring a § 544(b) claim where the triggering creditor would be time-barred under state law. <u>See</u> 11 U.S.C. § 546(a). This is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |

| | |
|---|---|
| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |

partially correct. A § 544(b) claim is timely only if the bankruptcy petition was brought within the applicable state statute of limitations and the fraudulent transfer action otherwise complies with the timing set forth in § 546(a). <u>Sears</u> <u>Petroleum</u> & <u>Transp.</u> <u>Corp.</u> v. <u>Burgess</u> <u>Constr.</u> <u>Servs., Inc.</u>, 417 F. Supp. 2d 212, 225-26 (D. Mass. 2006); <u>In re</u> <u>Mahoney, Trocki</u> & <u>Assocs., Inc.</u>, 111 B.R. 914, 917-18 (Bankr. S.D. Cal. 1990). Again, the timing is specifically governed by a provision in the Bankruptcy Code, but there is no comparable provision regarding preemption.

Therefore, as a threshold jurisdictional matter, the Trustee must show that an unsecured creditor's state-law claim against the FDIC in this instance is not preempted by the FDIA. <u>See</u> <u>Forbes</u>, 372 B.R. at 335. The FDIC's argument is not that the FDIA preempts § 544(b); as the Trustee points out, preemption does not apply to conflicts between federal laws. Instead, the FDIC is challenging the Trustee's <u>standing</u> to bring the § 544(b) claim. Because the triggering creditor's claim is governed solely by California fraudulent transfer law, the federal preemption defense applies. If the triggering creditor's claim is preempted, then the Trustee lacks standing to bring the § 544(b) claim. <u>See id.</u>; <u>Smith</u>, 365 B.R. at 658-59.

The Trustee's cited authorities are not to the contrary. <u>In re</u> <u>Mankin</u>, 823 F.2d 1296 (9th Cir. 1987), stands for the proposition that a § 544(b) claim arises under federal law. <u>Id.</u> at 1309. The relevant question in <u>Mankin</u> was whether a bankruptcy court could constitutionally exercise jurisdiction over § 544(b) claims. <u>Id.</u> at 1301-02. The Ninth Circuit decided that jurisdiction was proper, as a trustee's § 544(b) claim arises under federal law, even though it uses state-law rules of decision. <u>Id.</u> at 1308-09.

But it is undisputed that a § 544(b) is a federal claim. This fact does not allow the Trustee to dispense with the fundamental standing requirement that an actual unsecured creditor have a viable claim against the FDIC. Though the Trustee's right springs from federal law, the creditor's right does not and is therefore subject to federal preemption.

Nor is <u>Sherwood Partners, Inc</u> v. <u>Lycos, Inc.</u>, 394 F.3d 1198 (9th Cir. 2005), on point. There, the Ninth Circuit considered whether the Bankruptcy Code preempted the state-law preferential transfer claim brought by the assignee of the debtor. <u>Id.</u> at 1200-01. The assignee argued in part that the claim was "incorporated" by § 544(b). <u>Id.</u> at 1201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |

| | |
|---|---|
| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |

While the court ultimately decided that the state-law claim was not incorporated, it did refer to § 544(b) as representing a "partial incorporation" of state law. Id. at 1202. However, the case did not involve a claim by a trustee, and did not address the standing requirement of § 544(b) or whether a trustee could bring a claim where an unsecured creditor's claim was preempted.

Finally, Senior Unsecured Creditors' Committee of First RepublicBank Corp. v. FDIC, 749 F. Supp. 758 (N.D. Tex. 1990), does not stand for the proposition that a trustee can have standing to pursue a § 544(b) claim where the triggering creditor's claim is barred by preemption. Rather, it merely holds that the FDIC's statutory power does not impliedly repeal other federal laws that can be harmonized. See id. at 769. It does not address a trustee's right under § 544(b) at all. Indeed, it held that state-law fraudulent transfer provisions were preempted as applied to guarantees made to the FDIC. See id. at 769-70.

Accordingly, the Court must determine whether an unsecured creditor's claim against the FDIC in this instance would be preempted by the FDIA.

B.    Preemption of the California Fraudulent Transfer Statute

Although there is a general presumption against preemption, "the presumption is 'not triggered when the State regulates in an area where there has been a history of significant federal power,'" as in the area of banking regulation. Bank of Am. v. City & County of S.F., 309 F.3d 551, 558-59 (9th Cir. 2002) (citation omitted). There are typically three circumstances where a state law is preempted:

(1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress.

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |

| | |
|---|---|
| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |

Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1060 (9th Cir. 2009) (citation omitted).

      1.     Express Preemption

      The FDIC does not argue that the FDIA expressly preempts the California fraudulent transfer statute; it relies on conflict preemption. The Trustee, however, contends that the Court may not consider conflict preemption because the FDIA contains an express preemption clause, 11 U.S.C. § 1828(u), which the Ninth Circuit found does not bar the Trustee's claim. Thus, the reasoning goes, the state-law fraudulent transfer claim cannot be impliedly preempted because it is outside the scope of the express preemption clause. This logic is faulty for two reasons: (1) Section 1828(u) is not a preemption clause, and (2) even where a valid express preemption clause exists, the Court must consider whether a state law is impliedly preempted.

      First, it is clear that § 1828(u) is not an express preemption provision. Courts distinguish between "preemption" clauses and "preclusion" clauses. Within the context of the Securities Litigation Uniform Standards Act ("SLUSA"), the Supreme Court noted the difference: "[A preclusion provision] does not itself displace state law with federal law but makes some state-law claims nonactionable . . . in federal as well as state court." See Kircher v. Putnam Funds Trust, 547 U.S. 633, 636 n.1 (2006); Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1219-20 (9th Cir. 2009).

      Section 1828(u) provides, in relevant part:

      No person may bring a claim against any Federal banking agency . . . for the return of assets of . . . [a] controlling shareholder of the insured depository institution transferred to, or for the benefit of, an insured depository institution by such . . . controlling shareholder of the insured depository institution, or a claim against such Federal banking agency for monetary damages or other legal or equitable relief in connection with such transfer, if at the time of the transfer [the insured institution was undercapitalized].

12 U.S.C. § 1828(u)(1). "Claim" is defined as "a cause of action based on Federal or State law that – (i) provides for the avoidance of preferential or fraudulent transfers or

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-08627-JVS consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
|---|---|---|---|

| Title | In re: Imperial Credit Industries, Inc. Edward Wolkowitz v F.D.I.C. |
|---|---|

conveyances; or (ii) provides similar remedies for preferential or fraudulent transfers or conveyances." Id. § 1828(u)(2).

It is clear from the text that this is a preclusion clause — it provides a bar to a fraudulent transfer claim whether state or federal, rather than displacing state law with federal law. See Kircher, 547 U.S. at 636 n.1. Thus, as a matter of form, it is incorrect to consider § 1828(u) an express preemption clause.[2]

The practical effect of this distinction is to provide a clearer picture of Congress's intent regarding preemption. As the Trustee points out, where there is an express preemption provision, it can be inferred that Congress did not intend to preempt state laws outside the scope of that provision. Ishikawa v. Delta Airlines, Inc., 343 F.3d 1129, 1133 (9th Cir. 2003) ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 517 (1992)). The presence of an express preemption provision indicates that Congress considered the permissible scope of state authority; therefore, the provision provides the best indicium of Congress's intent on the subject. Cipollone, 505 U.S. at 517.

However, the § 1828(u) preclusion provision, which applies to state and federal fraudulent transfer claims alike, gives little indication that Congress considered the permissible scope of state regulation of federally-insured banks. Thus, the reasoning of Cipollone does not apply with equal force here.

Second, even if § 1828(u) was an express preemption clause, the fact that it does not bar the Trustee's claim does not end the preemption inquiry. The Supreme Court was very clear on this question in a recent preemption case:

> If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope

---

[2] The Court finds it significant that no where in its discussion of § 1828(u) did the Ninth Circuit characterize the statute as a preemption provision. Imperial Credit, 527 F.3d at 971-73. The Trustee's reading to the contrary is simply unsupported. (Pl.'s Additional Opp'n Br. 1, 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |

| | |
|---|---|
| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |

of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law.

Altria Group, Inc. v. Good, --- U.S. ----, 129 S. Ct. 538, 543 (2008); accord Sprietsma v. Mercury Marine, 537 U.S. 51, 65 (2002) ("Congress' inclusion of an express pre-emption clause 'does not bar the ordinary working of conflict pre-emption principles' . . . ."). Even those cases cited by the Trustee acknowledge that implied preemption principles apply even where there is an express preemption provision. See Ishikawa, 343 F.3d at 1133-34 (considering implied preemption despite the existence of an express preemption provision); Freightliner Corp. v. Myrick, 514 U.S. 280, 287-88 (1995) (finding the argument "that implied pre-emption cannot exist when Congress has chosen to include an express pre-emption clause in a statute . . . is without merit."); Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1264 (11th Cir. 2003) (acknowledging that "a finding of implied pre-emption is not forbidden where" the statute contains an express preemption provision).

According, the Court must consider whether implied preemption bars a California fraudulent transfer claim in this instance.

## 2. Implied Preemption

The FDIC argues that a California fraudulent transfer claim would be preempted in this instance because it conflicts with Congress's purpose in enacting the PCA provisions. "[T]he purpose of Congress is the ultimate touchstone in every preemption case." Altria, 129 S. Ct. at 543 (citation and internal quotation marks omitted). Under "conflict" or "obstruction" preemption, a state law may be preempted "to the extent it actually interferes with the 'methods by which the federal statute was designed to reach [its] goal.'" Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 653 (9th Cir. 2009).

Courts generally preempt state fraudulent transfer statutes which conflict with obligations imposed by federal banking regulators pursuant to their statutory powers. See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |

| | |
|---|---|
| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |

e.g., <u>Senior Unsecured Creditors</u>, 749 F. Supp. at 769-70 ("[S]ubjecting the FDIC to potentially inconsistent provisions of state law would impede the FDIC's mandate and ability to carry out its duties . . . . When faced with the potential collapse of a federally-insured institution, the FDIC must have the considerable flexibility afforded it . . . to fashion a solution."); <u>Sweet Jan Joint Venture v. FDIC</u>, 809 F. Supp. 1253, 1256-58 (N.D. Tex. 1992) ("If the [Federal Savings and Loan Insurance Corporation's] FSLIC's decisions are subjected to state law theories such as the one plaintiffs urge, its ability to operate as Congress intended could be unduly chilled if not completely compromised."); <u>Gulley v. Sunbelt Sav. FSB</u>, 714 F. Supp. 819, 821 (N.D. Tex. 1989) ("The statutory grant of flexibility and discretion to the [FSLIC as] Receiver may not be limited by state imposed restrictions."); <u>Valley Ranch Dev. Co., Ltd. v. Sunbelt Sav. FSB</u>, 714 F. Supp. 817, 818 (N.D. Tex. 1989) (same).

The Trustee argues that these cases are no longer applicable because § 1828(u), which was enacted after the above cases, evidences Congressional intent to <u>allow</u> state-law fraudulent transfer claims used to avoid obligations. The Trustee notes that Congress clearly had state-law fraudulent transfer claims in mind and was likely aware of the PCA provisions, yet did not prohibit state-law obligation-avoidance claims.

The Court is not persuaded that § 1828(u) disturbed the line of cases preempting state regulation of the FDIC's activities. First of all, as discussed above, § 1828(u) is not a preemption provision and therefore provides little insight as to Congress's thinking regarding the permissible scope of state regulatory authority. Second, contrary to the Trustee's contention, "not expressly prohibited" is not equivalent to "expressly permitted." As discussed above with respect to express preemption clauses, that the Trustee's claim is not specifically barred does not end the inquiry. <u>Cf. Altria</u>, 129 S. Ct. at 543. The Court may not simply rely on Congress's failure to explicitly prohibit claims like the Trustee's. The Court must determine whether allowing claims like the Trustee's would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[3] <u>Sprietsma</u>, 537 U.S. 64 (quoting <u>Hines v. Davidowitz</u>, 312

---

[3] The FDIC also argues that Congress's silence on preemption "may reflect nothing   more than the settled character of implied preemption doctrine that courts will dependably apply," <u>Crosby v. Nat'l Foreign Trade Council</u>, 530 U.S. 363, 387-88 (2000), particularly in light of the district court cases

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
|---|---|---|---|

| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. | | |

U.S. 52, 67 (1941)).

Here, Imperial's Performance Guaranty was required by the FDIC pursuant to the PCA provisions of 12 U.S.C. § 1831*o*, which was enacted to allow the FDIC to take "prompt corrective action" earlier with an undercapitalized institution as needed to minimize the long-term loss to the Deposit Insurance Fund. See 12 U.S.C. § 1831*o*(a); S. Rep. No. 102-167, at 3 (1991) ("[The statute] will require bank regulators to act promptly to prevent troubled banks from becoming taxpayer liabilities. The purpose of the prompt corrective action mechanism is to encourage regulators to resolve the problems of troubled institutions while the institutions can still absorb their own losses, protecting the deposit insurance system and the taxpayers.") When a bank is determined to be undercapitalized, it is required to submit a capital restoration plan. 12 U.S.C. § 1831*o*(e)(2). The FDIC may not accept this plan unless it is guaranteed by the bank's holding company. Id. § 1831*o*(e)(2)(C)(ii). Institutions considered "significantly undercapitalized" or "critically undercapitalized" face much stricter regulations. Id. § 1831*o*(f)-(i).

Allowing an unsecured creditor to challenge the holding company's guaranty of recapitalization as a fraudulent transfer under state law would present a significant obstacle to Congress's policy in providing the FDIC these regulatory powers. By reducing the certainty of performance of a holding company's guaranty, the application of state law impinges on the FDIC's discretion to treat an institution as undercapitalized, as opposed to "significantly" or "critically" undercapitalized, which would require more drastic regulatory measures. The FDIC is entitled to "considerable flexibility" in determining the proper course of action for a struggling institution, and permitting state-law challenges to the FDIC's statutorily-mandated actions necessarily reduces that

---

holding that state regulation of the FDIC's activities was preempted. See Senior Unsecured Creditors, 749 F. Supp. at 769-70; Sweet Jan Joint Venture, 809 F. Supp. at 1256-58; Gulley, 714 F. Supp. at 821; Valley Ranch, 714 F. Supp. at 818. The Court, however, is unwilling to give much weight to this argument because, had Congress actually considered the issue settled, it would not have had to provide the explicit bar to state fraudulent transfer claims in § 1828(u). The Court finds that there is no inference to be drawn from Congress's silence on preemption — Congress has simply not addressed the issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
| --- | --- | --- | --- |

| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |
| --- | --- |

flexibility.  See Senior Unsecured Creditors, 749 F. Supp. at 770.  While the Court does not go so far as to say that state-law challenges would "effectively bar the FDIC from accepting capital restoration plans from undercapitalized institutions with insolvent holding companies," (Mot. Br. 16), they would certainly undermine the FDIC's discretion in that situation to determine the best method for reducing the potential loss to the Deposit Insurance Fund.

The Trustee argues that transfer avoidance claims actually further the objectives of the PCA.  He speculates that, because guarantees by insolvent holding companies will be subject to challenge as fraudulent conveyances, the FDIC will be forced to take stricter action sooner against struggling banks.  However, the Court finds that this obstructs, rather than promotes, Congress's purpose.  Allowing state law to force the hand of the FDIC presents a fundamental interference with the methods chosen by Congress to handle undercapitalized institutions, which are laid out in 12 U.S.C. § 1831$o$ and committed to the discretion of the FDIC.

Because the application of California fraudulent transfer laws to a performance guaranty to the FDIC under § 1831$o$ is at cross-purposes with the FDIC's regulatory authority, the California laws must be preempted in this instance.  No unsecured creditors would have a viable claim under applicable state law; accordingly, the Trustee lacks standing to bring a claim under § 544(b).

The FDIC is entitled to summary judgment.[4]

IV.    CONCLUSION

For the foregoing reasons, the motion is GRANTED.

IT IS SO ORDERED.

---

[4]  Because the Court finds that the Trustee lacks standing to bring his claim, the Court does not consider whether there is a triable issue as to whether Imperial received reasonably equivalent value in exchange for the Performance Guaranty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-08627-JVS<br>consolidated with SACV 08-1116-JVS(ANx) | Date | August 2, 2010 |
|---|---|---|---|

| Title | In re: Imperial Credit Industries, Inc.<br>Edward Wolkowitz v F.D.I.C. |
|---|---|

|  |  | 0 | : | 18 |
|---|---|---|---|---|
|  | Initials of Preparer | jcb |  |  |

**<u>Exhibit 2</u>**

```
PRIORITY
SEND
```

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES -- GENERAL

Case No. CV 03-8627                    Dated and Filed:  February 15, 2005
Bankruptcy No.AD03-2710ES and LA 03-28969ES

Title:    In Re:  Imperial Credit Industries Inc.
          Imperial Credit Industries Inc. v. Federal Deposit Insurance Corp.

**PRESENT:  HONORABLE JAMES V. SELNA, UNITED STATES DISTRICT JUDGE**

          Karla J. Tunis                        Not Present
          Courtroom Deputy                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

          Not Present                            Not Present

**PROCEEDINGS (In Chambers):**   Order Denying Defendant FDIC's motion for immediate
                                 cure of deficit under commitment to maintain capital
                                 (Fld 12-13-04)

The Federal Deposit Insurance Corporation, acting in its corporate capacity, ("FDIC")
moves this Court pursuant to 11 U.S.C. § 365(o) ("Section 365(o)") for an order requiring
debtor Imperial Credit Industries, Inc. ("Imperial") to immediately pay to the FDIC the
deficit of $18,416,872 owed under a February 27, 2002 Performance Guaranty
("Performance Guaranty").  The Court denies the motion.

## Background

This motion arises out of events surrounding the attempted recapitalization of
Southern Pacific Bank ("SPB") between February 2002 and February 2003.

On February 1, 2002, the FDIC notified SPB that it was undercapitalized pursuant to
the Federal Deposit Insurance Act ("FDIA") and associated regulations.  (Fourth Amended
Complaint [hereinafter "FAC"], ¶ 12.)  In accordance with the FDIA and the associated
regulations, SPB was required to file a capital restoration plan with the FDIC by March 1,
2002.  (Id., ¶ 13.)· The same statute and regulations required Imperial to provide a guaranty
that SPB would perform the terms of the capital plan.  See 12 U.S.C. § 1831o(e)(2)(C)(ii).
Imperial executed the Performance Guaranty on February 27, 2002.  (FAC, ¶ 13.)

According to the terms of the Performance Guaranty, Imperial absolutely and unconditionally guaranteed SPB's performance under the terms of the capital restoration plan. (FAC, Ex. A.)  Imperial's maximum liability under the Performance Guaranty was limited to the lesser of (i) the amount necessary to restore the relevant capital measures of SPB to the levels required for SPB to be deemed adequately capitalized under applicable regulations, or (ii) 5% of SPB's total assets as of December 31, 2001.  (Id.)

Under the capital restoration plan that the FDIC accepted, SPB was required to raise sufficient new capital by July 22, 2002. (Id., ¶ 19.)  SPB, however, failed to meet this deadline.  (Id.)  As a result, the FDIC contends that Imperial is liable for $18,416,872 ("$18.4 million") under the Performance Guaranty. (Mot'n, p. 4.)

After a series of attempts to recapitalize SPB, the FDIC closed the bank on February 7, 2003.  (FAC, ¶ 62.)  Imperial then filed its Chapter 11 bankruptcy petition on July 17, 2003. (Id., ¶ 77.)  On November 6, 2003, Imperial filed its adversary complaint, raising as an issue the enforceablity of the Performance Guaranty under Section 365(o).  On January 28, 2004, this Court withdrew the reference with respect to all issues of fact and law raised in the adversary complaint.

**Discussion**

The FDIC seeks an order under Section 365(o) requiring Imperial to immediately cure its deficit of $18.4 million on the Performance Guaranty.

Section 365(o) was enacted as part of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, which was Congress' response to the devastating savings-and-loan crisis. In re Firstcorp, Inc., 973 F.2d 243, 246 (4th Cir. 1992). One of Congress' goals in passing this legislation was "to prevent institution-affiliated parties from using bankruptcy to evade commitments to maintain capital reserve requirements of a Federally insured depository institution." H.R. Rep. No. 681(I), 101st Cong., 2d Sess. 179 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6585. Section 365(o) helped achieve this goal by preventing "the trustee from rejecting any such commitment as an executory contract under his usual 'avoidance' powers" pursuant to 11 U.S.C. § 365(a). Id. at 180, reprinted in 1990 U.S.C.C.A.N. at 6586.

Section 365(o) provides that a Chapter 11 trustee "shall be deemed to have assumed . . . and shall immediately cure any deficit under any commitment[1] by the debtor to [the FDIC]

---

[1] Courts have broadly defined the term commitment in Section 365(o).  See In re Overland Park Fin. Corp., 236 F.3d 1246, 1252 (10th Cir. 2001) (using the common definition of "commitment," "an agreement or pledge to do something").  The Court finds that the Performance Guaranty at issue falls well within the bounds of the term "commitment" as used in Section 365(o).

MINUTES FORM 90
CIVIL - GEN

Page 2 of 4

Initials of Deputy Clerk ___kjt___

to maintain the capital of an insured depository institution." 11 U.S.C. § 365(o). The Tenth and the Fourth Circuits have both concluded that the assumption and cure required by this section are "prerequisites to reorganization under Chapter 11." Firstcorp, 973 F.2d at 248. See also In re Overland Park Fin. Corp., 236 F.3d 1246, 1253 (10th Cir. 2001) (same, citing Firstcorp). If a debtor cannot satisfy its immediate cure obligation, then "§ 365(o) denies it the opportunity to reorganize under Chapter 11, leaving liquidation under Chapter 7 as its only option." Id. at 248. See also Overland Park, 236 F.3d at 1253 (holding that "before a debtor may proceed with Chapter 11, and acquire Chapter 11 protection, the debtor's commitment to assume and cure its capital deficit must be satisfied").

Because Imperial has filed for bankruptcy under Chapter 11 and because, according to the FDIC, it owes $18.4 million under the Performance Guaranty, the FDIC contends Imperial must cure this deficit before proceeding further under Chapter 11. In response, Imperial asserts a number of defenses that, if valid, would relieve it of any obligation to cure and claims that they must be litigated before this Court can order the immediate cure that the FDIC requests.

As support for its position, Imperial cites Overland Park, in which the Tenth Circuit remanded a case to the Bankruptcy Court to rule on a holding company's defenses before ordering an immediate cure.[2] Id., 236 F.3d at 1253. The Court agrees with Imperial that the holding in Overland Park requires certain defenses to be litigated before a court can order an immediate cure under Section 365(o).[3] The Court, however, also agrees with the FDIC that Overland Park does not require litigation of all defenses a debtor may raise prior to an immediate cure. Rather, this Court finds that the Tenth Circuit's litigation requirement is limited to the type of defenses raised in that action: "obligor" defenses, or defenses based on a debtor's status as a signatory to a commitment, such as a performance guaranty.

While Imperial raises a number of defenses classifiable as "obligor", five in all,[4] it

---

[2] The Tenth Circuit refused to consider the defenses itself because, as a general rule, it does "not consider issues not passed upon below." Overland Park, 236 F.3d at 1253.

[3] The United States government, through the Office of Thrift Supervision ("OTS"), indicated that it shares this view in its appellate brief prepared in connection with the Fourth Circuit's review of Firstcorp. In this brief, the OTS stated that Section 365(o) did not "prohibit judicial challenge to the existence of and amount of the deficit under the net worth maintenance commitment." Brief for Appellee at 16-17, In re Firstcorp., Inc., 973 F.2d 243 (4th Cir. 1992) (No. 92-1108). According to the OTC, "Legitimate disputes may be litigated, but within the statute's command that Firstcorp's obligation to cure fixed 'immediately' on the filing of the Chapter 11 petition." Id.

[4] The Court finds that the following arguments fall into the category of "obligor" defenses: (1) the Performance Guaranty was limited to the March 1, 2002 Plan; (2) the FDIC failed to give pre-petition notice of the amount due and made no pre-petition demand for payment; (3) Section

MINUTES FORM 90
CIVIL - GEN

Page 3 of 4

Initials of Deputy Clerk __kjt__

Case 09-03087   Doc 17-1   Filed 01/26/10   Entered 01/26/10 16:06:59   Desc Exhibit
A   Page 4 of 5

also raises two that fall outside this category. These defenses, equitable subordination[5] and fraudulent conveyance,[6] can be categorized as "trustee" defenses, or defenses that can only be asserted on behalf of creditors as a Chapter 11 trustee. Because, under both <u>Firstcorp</u> and <u>Overland Park</u>, Imperial cannot exercise Chapter 11 powers without first curing its deficit, the Court finds that Imperial cannot litigate these defenses prior to satisfaction of the immediate cure obligation under Section 365(o). To do so would be to impermissibly place the debtor and its creditors ahead of the FDIC, to the potential detriment of taxpayers. <u>See</u> <u>Firstcorp</u>, 973 F.2d at 248. Once Imperial cures its deficit, however, and assumes the rights of a Chapter 11 trustee, it will be free to assert these claims against the FDIC.

## Conclusion

Based on the foregoing, the Court finds that, before it can order an immediate cure, Imperial must be given an opportunity to litigate its "obligor" defenses. Because these defenses were not raised in the initial moving papers, but rather, only in the Opposition and Reply, the Court finds that the "obligor" defenses have not been sufficiently briefed to permit a decision at this time. In addition, as noted above, the Court finds that Imperial's "trustee" defenses cannot be litigated before Imperial satisfies any obligation under its Performance Guaranty that may remain after litigation of its "obligor" defenses.

Accordingly, the Court denies the FDIC's motion for an immediate cure pending resolution of the "obligor" defenses.

---

365(o) only applies to Chapter 11 reorganizations, not Chapter 11 liquidations; (4) the post-bankruptcy demand violated the automatic stay and is void <u>ab initio;</u> and (5) the FDIC incorrectly calculated the amount of Imperial's deficit because it based its calculations on SPB's June 30, 2002 call sheets, as opposed to SPB's financial information as of July 22, 2002, the capital restoration plan deadline.

[5]Imperial may argue that its equitable subordination defense is equivalent to the defense of unclean hands that the holding company in <u>Overland Park</u> raised. <u>Id.</u>, 236 F.3d at 1250n.6. Were this argument to be made, however, the Court would disagree. Unclean hands is a generally available equitable defense, and therefore, would be available to a party in any forum. A claim or defense of equitable subordination, on the other hand, may only be raised in bankruptcy court, on behalf of creditors.

[6]In view of the fact that the Court has granted the FDIC's motion to dismiss the fraudulent conveyance claim, this defense is moot.